My name is Mike McDonald. I represent the appellant, Ann Eleanor Ploetz, in her capacity as trustee of the Laudine L. Ploetz 1985 Trust. May it please the court. It is Ms. Ploetz's position that the district court improperly applied Brown v. Brownfield and Williams v. the NFL to the facts of this case. In this case, the arbitrator, Mr. Goldman, was supposed to be a neutral arbitrator. He was not. Mr. Goldman represented to Ann Ploetz that he did not have business ties as a mediator to Morgan Stanley. He did. The district court Brownfield and Williams to the facts of this case, and it was contrary to the evident partiality standard established by the Supreme Court in Commonwealth Codings v. Continental Casualty and adopted in this Court's opinion in Olson v. Merrill Lynch. Why shouldn't we be asking another question, and that is whether there's significant doubt about his impartiality, rather than the test that the district court used? Why isn't it just a matter of significant doubt? Pardon, Your Honor? Why is the standard . . . Significant why is . . . Why is it not the standard that we should be applying that there's significant doubt about the person's, the arbitrator's impartiality? It's not the standard that the district court used, is it? No, the district court . . . Why shouldn't it? The district court used the significant doubt. He used the actual bias standard. Well . . . And the standard in Olson in Commonwealth is very different than that. The standard in Olson in Commonwealth, even the narrowest standard, would be that the business had to be more than trivial with the party. But didn't the district court ask whether there's a showing that the arbitrator's service . . . that this arbitrator's previous service as a mediator influenced his resolution of this dispute? Isn't that what he'd ask? I . . . Well, that's different from a significant doubt. We disagree that the district court should have been there. When it's a neutral arbitrator as opposed to a partial party arbitrator, the neutral arbitrator nondisclosure, if it's a nontrivial matter, is evidence of partiality. And that's where we are, that's where I believe Olson in Commonwealth is. Is there any evidence of actual partiality or bias in this case, or is it purely a per se rule that you're arguing for, which is nondisclosure equals, you know, the ability to overturn the arbitration decision? Well, the partiality is demonstrated by the fact that he either knew or should be presumed to know that he worked as a mediator for Morgan Stanley, and he hid that. He did not disclose that to Ms. Plutz. Well that could be a mistake, too. And I guess what I'm getting at is, were there any irregularity in the proceedings? Were there any decisions with which you take particular issue? Were there any instances during the proceedings in which he displayed bias or partiality or made questionable rulings? Are any of those allegations in the case, or is it purely . . . Those allegations are not in the case. Okay. So then is it a per se rule? I mean, prior involvement in any way, he disqualified this person from participating? I don't think it is a per se rule. The thing not disclosed has to be more than trivial. It has to be of a reasonably significant party contact. And by what measure do we judge that? Do we make that evaluation significant, or whatever it is? In other words, how much play in the joints is there for an arbitrator in this type of situation? The arbitrator . . . I would say in this particular case, I can only speak to this particular case and do my best. The arbitrator was specifically required to disclose that he worked as a mediator, where it's specifically required by FINRA, the SEC, and the party's contract. The failure to disclose should be sufficient evidence of partiality on the part of the arbitrator. Why would that give rise to a significant doubt about his impartiality? The idea that this person was an attorney and an arbitrator, he should have been able to determine that he had this conflict. An attorney . . . Why should a fact finder draw the inference that this created a significant doubt about his impartiality when he had disclosed all manner of other kinds of conflicts? Well, he didn't disclose . . . What is it about this particular omission, particularly in these circumstances, that ought to give me a significant doubt about his impartiality? He either didn't investigate or didn't choose to disclose that he worked as a mediator for Morgan Stanley. That's a significant event. Well, it might be a significant omission, but why does it give rise to a significant doubt about his impartiality? I'm sorry to sound like a broken record, but I don't understand why this should undermine . . . to use another collection of words, which we probably don't need . . . undermine the confidence in the outcome. I can only go back to this court's opinion in Delta, where they said the failure to disclose this more than trivial business experience with a party in itself is evidence of partiality. Well, but there was a significant amount of prior involvement between the parties and the arbitrator in that case. Well, Delta . . . Delta, in saying that, the court actually found the other way, but they did say that. The failure to disclose in itself can result in a finding of partiality. The significant doubt standard, if that's the standard the court is going to use, I don't know that we can overcome that standard. Well, then does the failure to disclose create sort of an aura of irregularity? Well, it does. It definitely creates a . . . at least in our opinion, it creates an aura of irregularity. The failure to disclose . . . when . . . there's one specific required disclosure in the entire Finder Arbitration Court . . . It's an ipso facto rule. If you don't disclose, you shouldn't have in any way . . . in any way have participated. He should have disclosed that he was a mediator. That would have given us a chance to have him removed. We were denied the opportunity to have him removed as an arbitrator because he failed to disclose that, and we would have removed him. Why isn't, even under your standard, the triviality standard? Why wasn't the non-disclosure here trivial? And follow my reasoning here, which is I understand that you make the case that Morgan Stanley arbitrations over which he presided, and he disclosed. And the only thing he didn't disclose was a mediation involving Morgan Stanley. And so, why isn't the failure to disclose a seventh contact trivial in light of the fact that he disclosed all the others? There's a significant . . . well, several reasons. But first, the difference between his failure to disclose . . . FINRA disclosed those contacts, not the arbitrator. Those were disclosed on his disclosure report by FINRA. The contacts as an arbitrator were four prior cases, two of which were broker note cases, which don't have anything to do with public customers. One was a settled case between the broker . . . or between the customer and Morgan Stanley. The other case, the determination was it was not eligible for arbitration, and the parties were referred to court if they wanted to go further with the matter. So, those cases didn't give any real cause for concern. The other two, to make the total of six, were cases that he had been assigned to but not participated in at that point. Those cases just didn't give cause for any significant concern. The contacts between an arbitrator in a FINRA proceeding and the parties is always on the record, never ex very formal. It's not like a mediator where you sit down with the party and you have conversations. Was there anything special or anything . . . I know that you learned about the mediation later after the arbitration. Is there anything about that prior mediation that's troubling you or is it the fact of the mediation itself and the failure to disclose? Well, it's the fact of the mediation and the failure to disclose the significant contacts that the mediation entails. The particular mediation did not . . . there was nothing about the mediation that troubled me, except the fact that it took place and the contacts were significant. I don't know how much I can go into off the . . . it's not in the record. The district court also held there was no misbehavior in this instance. Is that correct? Correct. They did hold that. Are you contesting that? We are contesting it. It would take an extension by this court of the Ninth Circuit's opinion and move . . . What's the evidence that you were deprived of a fair hearing? Isn't that the question? That is the question. Our claim is that we were deprived of a fair hearing because we were deprived of a fair and impartial arbitration panel because of the misbehavior of Arbitrator Goldberg in not disclosing his . . . Don't you have to do something more than that and go into the result and the circumstances? Doesn't it have to be some kind of objective showing that the hearing was not fair, other than just this sort of generalized complaint about the failure to disclose? The only case I can cite for our proposition is the Ninth Circuit case of Moove v. Citigroup. Otherwise, I would agree with the court. Okay. Thank you. I want to clear that up. Did you want to save any of your time for rebuttal? Not that I'm suggesting that you should. I do. Thank you. We'll hear from the counsel for the appellee. Is it pronounced Schneider? Schneider. Just pretend it's S-N-Y. Good morning. May it please the court. My name's Ruth Schneider. I'm here on behalf of the appellee, Morgan Stanley Smith Barney. A really important proposition that I think is key to start with in this case is that the Federal Arbitration Act provides a very limited avenue of judicial review of a final arbitration award. It sets forth very high enumerated standards for when a party can come into court and ask a court to vacate a final arbitration award. It is not a statute that provides a remedy for any procedural shortfall in the arbitration process. It sets a very high bar. And in this case, as most relevant to this case, it provides a remedy for evident partiality. And I think it's key to stop and just pause on the plain meaning of that phrase. Evident partiality. Bias you can see, essentially. Evident means clear to the vision or obvious. And there's no question here that plaintiff has not come close to meeting that standard. Now, as this court brought out in the opening argument, plaintiff is essentially arguing for a per se rule here. I'm sorry? Is arguing for a per se rule here is plaintiff's position. That because the FINRA rule listed mediation service as something that an arbitrator should disclose, and because it wasn't disclosed, QED, that means the award should be vacated. But there is simply no legal authority for the proposition that a failure to disclose standing alone warrants vacating an award, even if... Something sort of intrinsically attractive about a pure Caesar's wife test that should be applied? But that, Your Honor, that's not the standard that has been set here by Congress. Arbitration is a world of its own, and you have to take the good with the bad, the bitter with the sweet. And if the person doesn't violate the bounds of propriety too far, it's okay. That's correct, Your Honor. I think that's the regime that the FAA sets up here, is that arbitration is a private dispute resolution mechanism. It bears some similarities, but also some difference to judicial process. And when parties participate in that and get a final binding award, there are only certain avenues by which we want to open up the courts to a flood of post-award litigation questioning the result that was reached. All of which could have been avoided had it disclosed. We don't know anything about the reasons for the nondisclosure. What we do know, and what the case law requires, is to look at that underlying information. Was there something about this mediation, this past contact with the party, that, as Judge Arnold said, should have happened? That simply is not present here. This other mediation, the strunk proceeding, as we call it, was best guessed four or five years before the arbitration here. It involved not a single similar personnel, witness, counsel, facts, legal issues. It was held in an entirely different state. There is simply no reason to think that somebody who participated as a neutral mediator, which is important to remember. Mediators are not advocates on behalf of the parties. They are neutral facilitators of essentially private settlement conversations. And we have no idea what happened there. It could have been a ten-minute conference. There's nothing in the record about that. But on its face, there is no relationship between that proceeding and this one that should cause the court to have significant doubt that it could have affected Mr. Goldman's partiality in this case. And I think actually the two most relevant precedents from this court that I just want to highlight, the Montes case in 2001 unequivocally stated that a federal court cannot vacate an arbitration award based on failure to disclose merely because an arbitrator failed to comply with NASD rules. That was the predecessor to FINRA was NASD. That's clear as day. And plaintiff has essentially no response to that case. Is it a relevant circumstance at all or is it just out of the case? You know, I don't want to say that it could never be a relevant circumstance, but I think what courts have unanimously held is that a third-party organization cannot jettison the standards set by Congress. Similarly, the Supreme Court held in Hall Street Associates said the parties by contract cannot expand or jettison the standards for vacater set forth in Section 10. So it may be something to take note of, but the standard for vacater cannot be controlled by a FINRA rule. That is simply not the regime that Congress has set up in this case. And again, what of our cases are you most reliable on? The Montes case from 2001. Yes. And that is the one that held that the FINRA rules do not provide a ground for vacater. I also think the Dow Corning case in 2003, which actually Judge Arnold, you said on that panel not to test your memory bank too much. But the standard that that court case set forth was that in order to warrant vacater, the facts must objectively demonstrate such a degree of partiality that a reasonable person could assume that the arbitrator had improper motives. That is very strong language, as it should be given the standards set by the statute. And all of these cases clearly show that there is no per se rule. This is not a statute that provides a remedy for disclosure or nondisclosure itself. It is a statute that to look at the underlying information and see whether it really causes us concern that there was a risk that this arbitrator was not impartial in this proceeding. And that simply has not been shown in this case. So you don't apply the same rule that applies to federal judges, the person in the street's view of the situation? I'm not even sure whether the circumstances here would warrant disclosure by a federal judge. But I don't think it's the standards of judicial decorum that apply to judges. I think Justice White made clear and the court of appeals opinions that have followed have been very clear about what a stringent standard this is and that courts need to take account of the reality of the arbitration process that these are typically people who come from the industries that are involved in the arbitrations and that there is going to be a good amount of mixing in the marketplace that we have to realize not every single contact will be able to be disclosed. Is there any relevance to the fact that and you mentioned the Hall Street case and said that you can't expand outside of the grounds for vacater under the Federal Arbitration Act. But is there any role here for the fact that the parties contracted and made very clear that disclosure was required for the arbitrators? Is that relevant? Does that play into the analysis or does it completely fall away? I believe it completely falls away because that the same argument was made in Hall Street Associates. There the parties had they wanted to provide a remedy for errors of law in the arbitration, which is not contained in the Federal Arbitration Act. And the same arguments that plaintiff has advanced in her brief, the same cases about arbitration being a creature of contract and the parties can can set the table in the way they want by their contractual agreement. And the court said that's not that may be true in some aspects of the arbitration process. But here, in terms of the ability of a litigant to come into court after the award and ask a court to revisit everything and open the whole can of worms again, Congress has set a limited and exclusive list of circumstances in which that will be permitted. And I think it also bears noting that in this case, the contractual theory doesn't really follow logically. I mean, the parties submitted that they would conduct this arbitration under the auspices and the rules of FINRA. I don't think that amounts to a contractual agreement that if an arbitrator, a non-party to this agreement doesn't comply with an obligation placed on him, we, the parties are agreeing that the award should be vacated. I think that takes a lot of steps to even get to that point. But again, it doesn't matter because the Supreme Court has said in the regime of vacating final arbitration awards, the parties cannot use their contract to get around the regime set by Congress. Now, again, as I said, plaintiff has essentially put forth a per se theory about the value of disclosure itself. But even to the extent that she argues that there is something concerning about this mediation, I think those arguments are based entirely on speculation here. There's no relationship of the strong proceeding to the plots proceeding. We don't know anything about what happened there. It's not in the record. Speculation about ex parte contacts, again, something that might be relevant if that dispute were related in any way to the current proceeding, we might think about those cases that is entirely unrelated to the present proceeding and happened several years prior. I don't think there's been any serious showing that substantively that relationship should cause us concern. And I think plaintiff is essentially conceding that. I think even if the court applies a very generous reading of the Commonwealth Codings case, again, the Court of Appeals have made significant elaboration and the appearance of bias standard, the court would still look to the underlying information and say, is this something that appears to give rise to bias? And even that is simply not met in this case. And what we know from the precedents, and we cited a lot of cases in our brief, but the kinds of connections that courts have found concerning enough to warrant vacater for nondisclosure are really ones that involve substantial or close business, personal, financial ties. I mean, the paradigmatic case from Commonwealth Codings is an arbitrator who had worked as a consultant for one of the parties and had even rendered services on the construction projects that were being litigated over in the arbitration. I mean, that is truly the key example of what kinds of context should cause us concern. And there's nothing even approaching that level here. I also just want to point out briefly, we noted this in our brief, but there's a lot of mischaracterization of the FINRA rules that is happening in plaintiff's brief. I think that this contention that because of this nondisclosure, the FINRA rules make the award invalid or this is the kind of relationship that the arbitrator could have been removed for cause for, that's simply not true. The FINRA rules don't provide that this is something that would have given rise to a for-cause removal. The FINRA rules, in fact, for for-cause removals incorporate the standards from the case law. Rule 12-407 says an arbitrator can be removed if the arbitrator's bias lacks impartiality or has a direct or indirect interest in the outcome. The interest or bias must be definite and capable of reasonable demonstration rather than remote or speculative. So even FINRA itself has recognized that before we're going to talk about really removing an arbitrator or causing concern about the finality of an award, a really high threshold has to be met, notwithstanding the more prophylactic disclosure standards that it sets at the outset. And I think it's fine for FINRA to set more prophylactic disclosure standards. I think a perverse result would be if an arbitral organization was disincentivized from setting best practices and more prophylactic rules because it had to worry that any violation of those rules, no matter how trivial, could undermine the arbitration award. And that's essentially what plaintiff is asking here is that any procedural irregularity in the arbitration that doesn't exactly comply with the FINRA rules should give rise to vacater of the award. And that that would simply create not just a flood of litigation, but would disincentivize those organizations from from promulgating rules in the first place. And I'll just end quickly with the 10-A-3. You should slow down, Mr. Snyder, not all of us up on the bench here are still in the full bloom of youth as compared to my colleague to the left. Thank you. I'm not sure I am either, Your Honor, but you're right. I am a fast talker. So let me pause and see if I, if I can answer any questions. I guess you're a type A squared person. You may proceed. Okay. I will just finish with the 10-A-3 misbehavior. Um, the second grounds that was argued, um, for vacating the award here, um, as Your Honor's noted during the opening argument, the standard is, was the fair hearing, and that simply can't be said here at what courts have really looked at is, is this something that we can question, um, the integrity of the outcome of the arbitration? Because something related to the taking of evidence or the conduct of the hearing was so deficient that we're worried that this litigant didn't have a fair opportunity to present their position. That simply didn't happen here. The facts of, of the moving case in the ninth circuit, really, um, the facts here pale in comparison to that one where an arbitrator could have been permanently disqualified from even working for FINRA because he lied about having a law degree, nothing approaching that has been alleged here. And I think, um, I'll just conclude by saying, I think 10-A-3 is not the proper avenue for this dispute. Disputes about past contacts between a party and an arbitrator are, are assessed under the evident partiality standard. I don't think a creative reading of 10-A-3 should be used as an end run around meeting those appropriate standards. So unless the court has, uh, any questions, I'll stop my fast talking and take a seat. Very well. So we thank you for your time. Thank you. Mr. McDonald. Thank you. I've got just a couple of quick points. 1.1 Montez, uh, the, actually the holding in Montez was that it didn't meet any of the standards, uh, including the Commonwealth and the Olson standard. Uh, they didn't set a new standard in Montez. It just didn't meet any of the others. Um, the second point is the, um, FINRA rule, uh, says previous media, uh, services a mediator for a party to an arbitration must be disclosed. And the reason the language closely tracks Commonwealth, uh, it might preclude an arbitrator from rendering an objective and impartial determination. And that's very closely tracks Commonwealth. So this is not, uh, a poorly thought out rule. Um, the other point is the, uh, the district court judge, and this isn't, uh, the pleadings, but, uh, he said, if Morgan Stanley is going to hire a Mr. Goldman as a mediator, he's probably going to want to get hired again and ruling against Morgan Stanley, uh, and isn't a good way to get yourself hired as a mediator. And he recognized the problem with having Morgan Stanley have Goldman work as an undisclosed mediator for him and then come and do an arbitration. He just applied the wrong standard. Is there, I'm struck by one of the final comments, I'm paraphrasing it perhaps. There's nothing here to cause us to question the integrity of the proceeding. And your response to that is? The integrity of the proceeding, uh, was, uh, question is questioned by the failure of, uh, to disclose the arbitration, the proceeding itself, the there's nothing in the record to question. Um, the other thing, uh, we, uh, Morgan Stanley could have disclosed this by the way. They knew this. They knew Goldman work for him as a mediator. They could have disclosed that. That would have avoided the whole problem, but they benefit now by hiding it. Isn't there, aren't there facts though, that suggests that, um, different employees, different people didn't know it. If you look at the uniform submission agreement of Morgan Stanley, that's in the appendix, uh, that goes to New York, the same place where the struck, uh, mediation and the struck arbitration were run out of they there. It's interesting to put that in there, but things are run through New York. Very well. We thank you for the argument. Thank you. The case is now submitted and we will take it under consideration.